AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED
Oct 28, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
INFORMATION ASSOCIATED WITH APPLE ACCOUNTS FRANKNOWITZKIJR@ICLOUD.COM AND FNOWITZKI@ICLOUD.COM THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC.

Case No. 2:26-sw-1054 CKD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Child |
| 18 U.S.C. § 2252(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4) | Possession of Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice ______ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

Christopher Gecewicz, FBI Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.

Date: October 28, 2026 at 11:11 am

Carolyn K. Delaney
*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

ERIC GRANT
United States Attorney
KIMBERLY SOKOLICH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>INFORMATION ASSOCIATED WITH APPLE ACCOUNTS FRANKNOWITZKIJR@ICLOUD.COM AND FNOWITZKI@ICLOUD.COM THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT |

I, Christopher Gecewicz, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with Apple Accounts franknowitzkijr@icloud.com and fnowitzki@icloud.com ("Target Accounts") that is stored at a premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information

described in Section I of Attachment B, government authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since January of 2021. I was trained as an FBI Special Agent at the FBI Academy in Quantico, Virginia. During my time training in Quantico, I received specialized training in the methodology of general law enforcement. I am currently assigned to a Violent Crimes Squad of the Sacramento Division of the FBI, responsible for investigating and identifying child pornography and child exploitation crimes. I have performed law enforcement related tasks such as executing state and federal search and arrest warrants, utilizing confidential sources, coordinating undercover operations, and surveillance of subjects. In the course of my employment, I have participated in many search warrants in connection with child exploitation matters and other violations involving both physical locations like businesses and residences and online accounts. Moreover, I am a federal law enforcement officer who is engaged in investigating and enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, 2422(b), and 2423 (a), (b), and (c), and I am authorized by the Attorney General to request a search warrant.

3. As part of my daily duties as a Special Agent, I investigate criminal violations relating to child exploitation and child pornography (also known as child sexual abuse material or CSAM), or visual depictions of children engaging in sexually explicit conduct, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252. I have received training in the area of child pornography and child exploitation and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I am authorized to investigate crimes involving the sexual exploitation of children, including the sexual exploitation of children via the Internet. I have been the affiant on multiple search warrants involving child exploitation matters, which led to the arrest of individuals and the seizure of illicit evidence within the Eastern District of California and have participated in the execution of over 100 federal and state residential search warrants and seized evidence of violations of 18 U.S.C. § 2252.

4. I have attended numerous courses in the investigation of child sexual exploitation, child pornography, and online child sexual exploitation. In the course of my duties, I have been the investigating officer and affiant of hundreds of applications for search warrants relating to child pornography or exploitation investigations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. This investigation pertains to crimes against children and is ongoing and evolving. My understanding of the facts and circumstances presented within this affidavit may change over time, especially when considered in light of other evidence gathered during the investigation.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2251 – Sexual Exploitation of a Child; 18 U.S.C. § 2252(a)(2) – Distribution/Receipt of Child Pornography; and 18 U.S.C. § 2252(a)(4)(B) – Possession of child pornography have been committed by FRANK NOWITZKI. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and fruits of these crimes further described in Attachment B.

## II. JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## III. PROBABLE CAUSE

8. In September 2026, a foreign law enforcement agency[1] (FLA), operating in an online undercover capacity was monitoring Signal group chats for possible child exploitation offenses. Signal is a free, end-to-end encrypted messaging application used over the internet, based in Mountain View, California and run by the Signal Technology Foundation. Two of the group chats the FLA observed

[1] Your affiant is familiar with this foreign law enforcement agency and knows that they have previously assisted in FBI investigations and have provided reliable information in the past.

included “Father son nude bonding” and “Ganymendean Brotherhood.”

9. In Signal, the FLA observed Signal user “Max Cox” messaging in the “Father son nude bonding” group chat. On September 4, 2026, Max Cox messaged “Thanks check out my X @MaxCoxXL if you like big dick and sloppy fucking.”

10. On September 22, 2026, Max Cox posted the following message in Signal.




11. On or about September 22, 2026, Max COX shared 14 media files (videos and still images) in the “Ganymendean Brotherhood” group chat. The images depicted the sexual abuse of a prepubescent minor victim by two unidentified male subjects. Based on the images, it appears to be the same minor victim in the majority of the videos. EXIF data for some of the file dates indicates the files were produced in June and July of 2026.[2]

12. On September 23, 2026, the FLA shared media files with the FBI’s Child Exploitation Operation Unit/Operation Rescue Me (ORM), who subsequently shared the files with your affiant. Below are the descriptions of some of the video files:[3]

a. **File Name:** 695369455357725962.mp4

[2] EXIF data is information about the photo or video that is saved automatically within the file that records specific details about how, when, and where the photo or video was created, such as the camera model, exposure settings, and date.

[3] Your affiant has provided the following summaries of the CSAM files for the purpose of establishing probable cause. Should the court deem it necessary, your affiant will make the images described available the Court for an in-person review.

**File Description:** This is a color video, 51 seconds in length. There is an adult male in black and white striped Jockey brand boxer briefs pulled down, exposing his erect penis. He is rubbing his erect penis with his right hand. In front of the adult male is what appears to be a prepubescent minor victim, with black Pikachu underwear pulled down to expose their buttocks. The adult male ejaculates on the minor victim's lower back, bare buttocks, and butt crack. The erect penis rubbed against the butt crack of the prepubescent minor victim to wipe/spread the ejaculate. The erect penis also slapped the exposed butt check multiple times.

b. **File Name:** IMG_1809.mp4

**File Description:** This is a color video, 47 seconds in length. This video is identical to the file described above, however, the camera angle is from the viewpoint of the adult male in the black and white zebra-striped Jockey brand boxer briefs. The prepubescent minor victim has the same black Pikachu underwear.

13. Using an open-source image repository, ORM located an image of a child on an Instagram page of a Roseville, California elementary school[4] that was visually similar to the victim in the CSAM files. Your affiant confirmed the identity of the child victim with the school district, who provided the victim's information.

14. On September 23, 2026, your affiant interviewed the victim's mother. Your affiant showed the victim's mother sanitized, non-CSAM still images from the files shared by Max Cox on Signal. The mother identified her son in the images. The mother confirmed that her son was born in 2017. She believed, based on what her son looked like, that the images and videos were taken approximately a year ago in 2025. The mother also recognized her son's Pikachu underwear and noted that he went through a Pikachu and Pokémon phase the previous year. The mother further stated that approximately a year ago the victim began soiling himself, but they could not determine the cause.

Identifying Nico Cox

15. ORM investigators reviewed the X account "@MaxCoxXL" that "Max Cox" posted in the Signal Group Chat. @MaxCoxXL posted images of an exposed adult penis, with the male's underwear

---

[4] I am aware of the name and address of the elementary school but am not including it in this affidavit to protect the confidentiality of this investigation at an early stage, as well as to protect the identity of the victim.

pulled down. Some images showed black and white zebra-striped Jockey brand boxer briefs that appeared to be the same boxers seen in the CSAM files posted by Max Cox on Signal (described above). Using open-source information, investigators identified "Max Cox" and Nico Carrera Cox from Folsom, California.

16. On September 24, 2026, law enforcement searched Cox's residence pursuant to a federal search warrant. Review of Cox's cellphone pursuant to the warrant revealed Telegram messages between Cox and a contact saved in Cox's phone as "FM." [5]

17. On September 2, 2026, FM messaged Cox, "Any more hot vids bruh." In response, Cox sent FM over 20 videos containing CSAM, including videos depicting prepubescent children and infants. For example, one video depicts an adult male anally penetrating an infant. The focus of the camera is on the penetration. The infant has light brown skin and appears to be naked from the waist down. The adult male thrusts his penis multiple times into the infant's anus.

18. On July 20, 2026, Cox sent the following message to FM.

> Was thinking about [Minor Victim] and you playing with him the other day [drool face emoji].

19. On July 23, 2026, Cox and FM exchanged the following messages:

> Cox: : That's so hot // You have him tomorrow?
>
> FM: I'll have him tonite and a bit during the day tomroo // If u free at all later should stop by otherwise [a] few more weeks til he comes again Probably
>
> Cox: Fuck ok. I probably wouldn't make it there till after 12 // He's probably tired too
>
> FM: That's fine hehe up to u lil bro // And even better if he's tired hehehhe
>
> Maybe I'll be balls deep in him already hehe mmmm getting him stretched enough for yiur fat dick mmmmmm // No worries if u can't make it rho next time lemme know either way lik bruhhh // Lil *
>
> Cox: I just got off. Is he still awake?

20. On July 24, 2026, the following conversation occurred:

> Cox: That was the perfect day and night

[5] Telegram is a free, cloud-based instant messaging and social media platform that lets you send text messages, share large files, and make voice or video calls.

FM: Hell yeah I agree thank u lil bro // I'm so glad u enjoyed Hehehhee

Cox: Nah thank you big bro for having me over // I loved just sitting with him on the couch and feeling him up

FM: Don't like tell anyone especually like any info or names or whatever pleeez lil bro keep this our lil hot secret and we can have more n mkre fun in future

Cox: My lips are sealed bro

FM: Good boy

21. On September 5, 2026, at approximately 4:47PM, FM sent Cox a 12-second color video of the minor victim lying down on a futon-like bed with grey sheets, with a red and sunflower print blanket, naked from the stomach down. The victim's penis is exposed, and the camera moves closer to the victim's penis during the video.

Identifying Frank Nowitzki

22. On September 24, 2026, your affiant interviewed Cox. Cox identified himself as the adult individual wearing the zebra-striped Jockey boxer briefs in the aforementioned Signal videos. Cox disclosed that he gained access to the minor victim through the victim's babysitter "Frank." Cox said that he communicated with Frank through Telegram and that Frank's contact display name was "FM."

23. Your affiant spoke with the parents of the minor victim, who identified "Frank" as "Frank John Nowitzki". The parents reported that Nowitzki was a family friend for over 10 years. Nowitzki also babysat the minor victim. The parents reported that the last time Nowitzki babysat the minor victim was early September 2026.

24. On October 2, 2026, law enforcement executed a federal search warrant at Nowitzki's residence in Orangevale, California. During the search, investigators located bedding and furniture that matched the background in the CSAM videos involving the minor victim.

25. Investigators also located an iPhone 11 Pro Max, which Nowitzki identified as his cellphone. Nowitzki claimed that he did not remember the password to his iPhone. Nowitzki repeatedly entered incorrect passwords into the iPhone 11 Pro Max, causing the iPhone to lock. Due to Apple security, once the phone locks, if the phone is not unlocked after 72 with the correct password or biometrics, the phone enters a more secure state that does not allow investigators to access any encrypted data.

26. Investigators interviewed Nowitzki after the search of the home. Nowitzki provided his email address, franknowitzkijr@icloud.com and stated that he is the only person who had access to this email address.[6]

<u>Examination of Nowitzki's Phone</u>

27. Forensic Investigators examined the iPhone 11 Pro pursuant to a search warrant.[7] In the phone's "Device Info," two Apple IDs were linked to the phone: franknowitzkijr@icloud.com and fnowitkzi@icloud.com. Based on the "Device Info" data from the iPhone 11 was last backed up to iCloud on October 1, 2026.




[6] During the interview, Nowitzki denied any wrongdoing.

[7] Due to Apple Security features, and Nowitzki repeatedly entering incorrect passwords, investigators were only able to review some of the contents of Nowitzki's phone.

## IV. BACKGROUND CONCERNING APPLE

29. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

30. Apple provides a variety of services that can be accessed from Apple devices, such as iPhones, or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

//

d. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

e. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

f. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

31. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

32. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-

in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

33. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

34. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

35. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-

Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Some of this data is stored on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple. Records and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

36. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. As noted above, iCloud Backup allows users to create a backup of their device data, meaning data stored on a person's cellular device may be backed up to the associated iCloud account. In this case, Nowitzki's iPhone 11 Pro was last backed up on October 1, 2026, after Nowitzki and Cox had exchanged messages and images involving the minor victim.

37. The stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. In this case, Nowitzki sent photographs of the minor victim to Cox through Telegram, an application saved on the iPhone 11 Pro. Given that Nowitzki identified the iPhone as his primary device, it is likely that the iPhone was used to take or send images of the minor victim. These images may have been backed up to the Apple iCloud accounts.

38. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime),

or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

39. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation. Here, information in the Apple account may confirm correspondence between Nowitzki, Cox, and other collectors of CSAM. Additionally, based on my training and experience, collectors of CSAM often use multiple encrypted applications to share and receive files of child pornography. Information connected to the Apple ID may reveal such applications as Telegram, Signal, Mega, or Tor.

40. As discussed above, Nowitzki identified the iPhone 11 Pro max as his primary phone. The Data Info for the iPhone lists the Target Accounts as the associated iCloud accounts with a last back up date of October 1, 2026. Therefore, Apple's servers are likely to contain stored electronic communications and information that may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## V. <u>CHARACTERISTICS OF INTERNET SEXUAL CRIMES AGAINST CHILDREN OFFENDERS / INDIVIDUALS INTERESTED IN CHILD PORNOGRAPHY</u>

40. My knowledge of individuals interested in child pornography and their characteristics is based on my experience as an experienced investigator, and on training I have received focused on crimes against children. Based upon this training and experience, as well as upon information provided to me by other law enforcement officers, I am aware of the following general characteristics of individuals that have a sexual interest in children, which may be exhibited in varying combinations:

a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from

literature describing such activity. Due to the accessibility and availability of child pornography on the Internet, in my recent experience, instead of maintaining collections, some offenders engage in a pattern of viewing or downloading child pornography online and then deleting the material.

b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including digital media Individuals who have a sexual interest in children or images of children often use these materials for their own sexual arousal and gratification. They may also use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, often at the collector's residence, places frequently visited, family members' houses, and inside vehicle(s) under the collector's control, but increasingly also online through remote storage, to enable the individual to view the collection, which is valued highly.

d. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials. They rarely destroy correspondence from other child pornography distributors/collectors (unless they are using applications designed for secrecy, which feature message deleting features and encryption), and they conceal such correspondence as they do their sexually explicit material. Finally, these offenders often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Based on my training and experience, many individuals who have a sexual interest in children will keep this information, as well as child pornography images, on their personal smart phones such as iPhones. Based on my training and experience, most people keep their personal smart phones on their person

(such as in a pocket or backpack). Evidence from smart phones are frequently backed up through cloud storage, often by default or required when users first set up their phone.

## VI. TECHNICAL TERMS

41. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

c. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

d. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital

code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

e. "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

f. "Computer software," as used herein, is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

g. "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

h. "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

i. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

k. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

## VII. CONCLUSION

42. Based on the foregoing, I request that the Court issue the proposed search warrant.

43. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/

Christopher Gecewicz
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically on: October 28, 2026

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA KIMBERLY SOKOLICH

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with franknowitzkijr@icloud.com and fnowitzki@icloud.com ("Target Accounts") that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at Apple Inc., One Apple Park Way, Cupertino, CA.

## ATTACHMENT B
## Particular Things to be Seized

### I. Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

1) All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

2) All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services

Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

3) The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

4) The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

5) The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

6) All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;
7) All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;
8) All records pertaining to the types of service used;
9) All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. §2251(a) – Sexual Exploitation of a Child; 18 U.S.C. § 2252(a)(2) – Receipt/Distribution of Child Pornography; and 18 U.S.C. §2252(a)(4)(B) – Possession of Child Pornography, those violations involving FRANK JOHN NOWITZKI and other persons known and unknown, and occurring from January 1, 2025, until October 2, 2026, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Child pornography, as defined in 18 U.S.C. § 2256(6), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.

b. Records and information relating to the sexual exploitation of children, including correspondence and communications between users of child pornography, and child pornography websites.

c. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

e. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>INFORMATION ASSOCIATED WITH APPLE ACCOUNTS FRANKNOWITZKIJR@ICLOUD.COM AND FNOWITZKI@ICLOUD.COM THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | Case No. | 2:26-sw-1054 CKD |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California for evidence of crimes committed in the Eastern District of California. *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before November 11, 2026 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of __________.

Date and time issued: October 28, 2026 at 11:11 am

[signature]

*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge

*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| --- | --- | --- |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned telephonically before me this date.

Signature of Judge

Date

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with franknowitzkijr@icloud.com and fnowitzki@icloud.com ("Target Accounts") that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at Apple Inc., One Apple Park Way, Cupertino, CA.

# ATTACHMENT B
## Particular Things to be Seized

### I. Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

1) All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

2) All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services

Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

3) The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

4) The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

5) The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

6) All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;
7) All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;
8) All records pertaining to the types of service used;
9) All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. §2251(a) – Sexual Exploitation of a Child; 18 U.S.C. § 2252(a)(2) – Receipt/Distribution of Child Pornography; and 18 U.S.C. §2252(a)(4)(B) – Possession of Child Pornography, those violations involving FRANK JOHN NOWITZKI and other persons known and unknown, and occurring from January 1, 2025, until October 2, 2026, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Child pornography, as defined in 18 U.S.C. § 2256(6), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.

b. Records and information relating to the sexual exploitation of children, including correspondence and communications between users of child pornography, and child pornography websites.

c. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

e. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.